# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROAD SPRINKLER FITTERS LOCAL
UNION NO. 669, U.A., AFL-CIO,

    *Plaintiff*,

v.

NATIONAL LABOR RELATIONS
BOARD,

    *Defendant*.

Civil Action No. 17-1200 (TJK)

## MEMORANDUM OPINION

Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO ("Local 669") brings this action challenging an order of Defendant National Labor Relations Board (the "Board") affirming a decision to order a union decertification election. Through that election, sprinkler fitters employed by construction company AFP Specialties Inc. ("AFP") decisively voted out Local 669 as their representative for collective-bargaining purposes. Although federal courts generally lack subject matter jurisdiction over Board orders emanating from representation proceedings, Local 669 argues that the Court has jurisdiction under the narrow exception announced in *Leedom v. Kyne*, 358 U.S. 184 (1958). As explained below, the Court concludes that the *Leedom* exception does not apply. As such, the Court does not have subject matter jurisdiction over this matter and will grant the Board's Motion to Dismiss (ECF No. 11). It will also deny as moot Local 669's Cross-Motion for Summary Judgment (ECF No. 13) and Corrected Cross-Motion for Summary Judgment (ECF No. 17).

**I.     Background**

   **A.     Statutory Background**

"The National Labor Relations Act of 1935 ('NLRA'), 29 U.S.C. §§ 151-169, establishes a federal regime for managing labor relations and generally authorizes the [Board] to resolve disputes between labor organizations and employers." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Liberty Mar. Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016). One of the Board's principal duties is to determine whether employees want to be represented for collective-bargaining purposes. *See* 29 U.S.C. § 159. A decertification election provides employees with "an opportunity to choose no longer to be represented by a union." *Brooks v. NLRB*, 348 U.S. 96, 100-01 (1954). Under certain circumstances, incumbent unions are protected from decertification elections for a period of time by the Board's "contract bar" rule. In this case, the question of whether the "contract bar" rule applies turns on whether the employees at issue have a relationship with Local 669 that is governed by Section 9(a) or Section 8(f) of the NLRA.

Under Section 9(a), "a union that obtains the support of 'the majority of the employees in a unit' will become the recognized representative of those employees, and the employer will be obligated to communicate and negotiate with it on the terms and conditions of employment." *Colo. Fire Sprinkler, Inc. v. NLRB*, 891 F.3d 1031, 1035 (D.C. Cir. 2018) (quoting 29 U.S.C. § 159(a)). "[T]he scope of the bargaining unit is determinative of what employees the unit represents." *Boise Cascade Corp. v. NLRB*, 860 F.2d 471, 474 (D.C. Cir. 1988) (emphasis omitted). If a collective bargaining agreement reflects a Section 9(a) relationship between a unit of employees and a union, it triggers the three-year "contract bar." *See Shepard Convention Servs., Inc. v. NLRB*, 85 F.3d 671, 672 n.2 (D.C. Cir. 1996). Under the "contract bar rule," the Board "will generally refuse decertification elections, whether requested by the employer, the employees or another union," for three years from the effective date of the collective bargaining

2

agreement, except during a brief window that opens shortly before the three years are up. *NLRB v. Dominick's Finer Foods, Inc.*, 28 F.3d 678, 683 (7th Cir. 1994). The "contract bar" rule "is well established in NLRB adjudications though it appears nowhere in statute and is not the result of judicial mandate." *Hill v. WMATA*, 309 F. Supp. 2d 63, 68 (D.D.C. 2004).

Section 8(f) of the NLRA "creates a limited exception to this majority support requirement for the construction industry." *Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531, 534 (D.C. Cir. 2003). Under Section 8(f), an employer that is a construction-industry contractor "may sign a 'pre-hire' agreement with a union regardless of how many employees authorized the union's representation." *Id.* (citing 29 U.S.C. § 158(f)). These agreements "respond to the unique nature of the industry" because "[c]onstruction companies need to draw on a pool of skilled workers and to know their labor costs up front in order to generate accurate bids" and "union organizing campaigns are complicated by the fact that employees frequently work for multiple companies over short, sporadic periods." *Id.* (citing *NLRB v. Local Union No. 103*, 434 U.S. 335, 348-49 (1978)). Significantly, "a construction-industry contract will be *presumed* to be governed by section 8(f) unless the employer and union clearly intended to create a section 9(a) agreement." *Colo. Fire Sprinkler*, 891 F.3d at 1038 (quoting *Nova Plumbing*, 330 F.3d at 537). By statute, a Section 8(f) agreement "is not protected by traditional contract-bar rules." *Donald Schriver, Inc. v. NLRB*, 635 F.2d 859, 875 (D.C. Cir. 1980); *see* 29 U.S.C. § 158(f) ("[A]ny agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.").

B.   **Factual and Procedural Background**

Local 669 is a "national labor organization" as defined in the NLRA. ECF No. 1 ("Compl.") ¶ 3; ECF No. 11 ("Def.'s MTD") at 6. In 1954, it was certified by a national election pursuant to Section 9(a) of the NLRA as the exclusive collective bargaining representative of

3

"sprinkler fitter employees" who, through their employer, belonged to the National Fire Sprinklers Association, Inc. (the "Association")—"an association of construction employers in the fire protection industry." Compl. ¶¶ 4, 7.

AFP is a company in the construction industry that installs, repairs, and dismantles fire protection and control systems. Compl., Ex. E ("Decision") at 1. In 2005, AFP executed an acknowledgment with Local 669 (the "2005 Acknowledgment") that recognized Local 669 as its sprinkler fitters' exclusive collective bargaining representative. *Id.* at 5; Def.'s MTD at 6. The 2005 Acknowledgment states in relevant part:

> [AFP] confirmed that a clear majority of the sprinkler fitters in its employ are members of, and are represented by[,] [Local 669] for purposes of collective bargaining.
>
> [AFP] therefore unconditionally acknowledges and confirms that Local [] 669 is the exclusive bargaining representative of its sprinkler fitter employees pursuant to Section 9(a) of the National Labor Relations Act.

Decision at 5; Def.'s MTD at 6.

In 2010, AFP and Local 669 executed an "Assent and Interim Agreement" (the "2010 Assent"). Decision at 5; Def.'s MTD at 6. It provides that:

> [AFP] hereby freely and unequivocally acknowledged that it has previously confirmed to its full satisfaction and continues to recognize [Local 669]'s status as the exclusive bargaining representative of its employees pursuant to Section 9(a) of the National Labor Relations Act . . . .

Decision at 5; Def.'s MTD at 6.

In 2011, AFP settled a lawsuit with four funds regarding unpaid fringe benefit contributions. Compl. ¶ 8; *see also id.*, Ex. B (the "2011 Settlement Agreement"). As part of the 2011 Settlement Agreement, AFP agreed that, if it did not pay the funds what it owed by March 31, 2013, it would "designate . . . [the Association] to act on its behalf as representative in

4

national collective bargaining for, and to be bound by any successor Collective Bargaining Agreement or Agreements with[,] [Local 669]." Compl. ¶ 8 (quoting 2011 Settlement Agreement ¶ 12). AFP did not meet the March 31 deadline, and so it designated the Association as its representative and "became part of the national [Association] multi-employer bargaining unit covered by the existing 1954 NLRB certification." *Id.* ¶ 9. Local 669 and the Association have entered into several national multi-employer agreements, with the most recent one running from April 1, 2016 to March 31, 2021. *Id.* ¶ 10; Decision at 5.

On November 4, 2016, an AFP employee filed a petition under Section 9(c) of the NLRA seeking to decertify Local 669 as the exclusive bargaining representative for a unit of AFP sprinkler fitters. Decision at 2; Def.'s MTD at 7. AFP argued, among other things, that the "contract bar" rule did not apply because the unit had a Section 8(f), not a Section 9(a), relationship with Local 669. Decision at 2. Local 669, for its part, argued that the "contract bar" rule *did* apply because, by designating the Association to be its collective bargaining representative in 2013, AFP "agreed to be bound to the terms of its multi-employer contract" reached in 2016, which was governed by the Board's 1954 certification of Local 669 pursuant to Section 9(a). *Id.*; *see also id.* (noting Local 669's position that "the single employer unit sought . . . does not exist").

On January 11, 2017, a Regional Director of the Board issued a Decision and Direction of Election, in which she concluded that the "contract bar" rule did not apply. Decision; *see* Compl. ¶ 11. As a preliminary matter, she explained that the bargaining unit for the purposes of the Decision encompassed "[a]ll journeymen sprinkler fitters and apprentices in the employ of AFP" who perform certain enumerated tasks (the "AFP Unit"). Decision at 2; *see id.* at 2 n.1. She noted that this definition was "taken from the 2016-2021 collective bargaining agreement

5

between the Union and the [Association]," and that "[a]ll parties stipulated that this unit is 'an appropriate unit within the meaning of Section 9(b) of the [NLRA].'" *Id.* at 2 n.1.

Most significantly, the Regional Director found that Local 669 had failed to establish that a Section 9(a) relationship that would bar a decertification election existed between it and the AFP Unit. Referencing the well-established maxim that "[m]ajority status is the sine qua non for contract bar in the construction industry," she pointed out that "there [had] never been a union election of any kind or nature" involving AFP's sprinkler fitters. *Id.* at 3, 6. Moreover, she concluded that "[n]ot the 2005 Acknowledgement, not the 2010 Assent, not the 2011 Settlement Agreement—not one of these documents establishe[d] that [AFP] recognized [Local 669] based on [Local 669] having shown or offered to show evidence of majority support as required in [*Staunton Fuel & Material, Inc., d/b/a Central Illinois Construction*, 335 N.L.R.B. 717 (2001)]." *Id.* at 6. She contrasted the language in those documents—which say nothing about whether Local 669 had the majority support of AFP's sprinkler fitters—with other contractual language that the Board determined *had* formed a Section 9(a) relationship in other cases. *See id.*

The Regional Director also explained that under Board precedent:

> [I]f any employer joins an association designating the association as its bargaining representative, the union must have established its majority status of the individual employer's employees before the contract is assumed, otherwise, regardless if the association contract to which the employer is subject is a 9(a) contract, the Board treats it as an 8(f) contract with respect to that individual employer and it is not a bar.

*Id.* at 4 (citing *Comtel Sys. Tech., Inc.*, 305 N.L.R.B. 287 (1991)). In other words, the mere fact that AFP designated the Association as its collective bargaining representative in 2013 did not create a Section 9(a) relationship between its employees and Local 669, even though in 1954, the Board had certified Local 669 as the Section 9(a) representative of employees whose employers belonged to the Association. As such, the Regional Director concluded that Local 669's

6

argument that a single-employer bargaining unit consisting solely of AFP's sprinkler fitters "does not exist" was "without merit." *Id.* at 6-7 (citing *Comtel*, 305 N.L.R.B. at 289). As a result of the Direction of Election, an election was held in which Local 669 was voted out by a tally of three to one. Def.'s MTD at 10 (citing ECF No. 11-5).

On May 18, 2017, the Board denied Local 669's request to review the Decision, concluding that it raised "no substantial issues warranting review." Compl. ¶ 12; *see also* Compl., Ex. F (the "Order"). In a footnote, however, the Board affirmed the conclusion of the Regional Director that the bargaining relationship between AFP and Local 669 was governed by Section 8(f), not Section 9(a), and held that the Decision "correctly rejected [Local 669's] arguments regarding the multiemployer unit and contract bar in directing an election in the single-employer unit." Order at 1 n.1.

On June 19, 2017, Local 669 filed the instant lawsuit. *See* Compl. The complaint alleges that the Board violated Section 9(a) of the NLRA and the terms of the 1954 certification (which it alleges applies to AFP's sprinkler fitters through their employer's membership in the Association's multi-employer unit) by allowing the election and subsequent decertification of Local 669. *Id.* ¶¶ 17-18. Local 669 seeks a declaratory judgment that the Board violated Section 9(a) of the NLRA and the terms of the 1954 certification by ordering the election. *Id.* at 7. It also requests that the Court vacate the "NLRB's order of election," vacate the results of the election, and order the Board to notify AFP that it remains part of the multi-employer unit. *Id.*

On October 3, 2017, the Board moved to dismiss Local 669's complaint for lack of subject matter jurisdiction. Def.'s MTD; *see also* ECF No. 20 ("Def.'s Reply"). Local 669 opposed and cross-moved for summary judgment. *See* ECF No. 13; ECF No. 17 ("Corr. Cross-Mot."); ECF No. 25 ("Pl.'s Reply").

## II. Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The law presumes that "a cause lies outside [the Court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Id.* On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "plaintiffs bear the burden of establishing jurisdiction." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017). To determine its subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

## III. Analysis

The parties agree that the dispositive issue for purposes of the Board's motion is whether Local 669 has met its burden of demonstrating that the narrow exception announced in *Leedom* provides this Court with subject matter jurisdiction. Def.'s MTD at 1; Corr. Cross-Mot. at 1, 9; Def.'s Reply at 1; Pl.'s Reply at 1. Local 669 has failed to do so.

"The cases are legion holding that, as a general rule, Board orders emanating from representation proceedings are not directly reviewable in court." *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1310 (D.C. Cir. 1984). But "the Supreme Court has established one important and extremely narrow exception to the general rule that Board representation orders are not subject to direct judicial review." *Id.* at 1311 (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)). "[I]n order to justify the exercise of *Leedom* jurisdiction, a plaintiff must show, *first*, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' and, *second*, that barring review by the district court

'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'" *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (second alteration in original) (citations omitted) (quoting *Leedom*, 358 U.S. at 188; *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). Thus, the *Leedom* exception is "extraordinarily narrow" and only available in the "rarest of circumstances." *Hartz*, 727 F.2d at 1311-12; *see also Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 344 (D.C. Cir. 2002) ("The invocation of *Leedom* jurisdiction . . . is extraordinary." (quoting *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 (D.C. Cir. 1984))). Indeed, the limitations on *Leedom* jurisdiction are "nearly insurmountable." *DOJ v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993).

Here, Local 669 has not met the first requirement to establish *Leedom* jurisdiction: it has failed to "identify a specific provision of the [NLRA] which, although it is 'clear and mandatory,' has nevertheless been violated by the Board." *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (en banc) (citation omitted) (quoting *Leedom*, 358 U.S. at 188).

Local 669 argues that the Order is "directly contrary to the statutory mandates of NLRA Section 9(a)." Corr. Cross-Mot. at 7. Section 9(a) provides that "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit. . . ." 29 U.S.C. § 159(a). According to Local 669, because (1) it was certified by the Board as the collective bargaining representative of the Association's multi-employer unit in 1954, (2) AFP joined that unit in connection with the 2011 Settlement Agreement, and (3) Local 669 entered into a collective bargaining agreement with the Association in 2016, the statute

9

commands that it "shall be the exclusive representative[]" of the AFP employees at issue. Corr. Cross-Mot. at 8 (emphasis omitted) (quoting 29 U.S.C. § 159(a)); *see id.* at 5, 7-8.

But Local 669's argument cannot carry the day because Section 9(a) does not place a "clear and mandatory" duty upon the Board. In fact, Section 9(a) does not impose *any* obligation on the Board at all. Instead, it "imposes on the *employer* a 'negative duty to treat with no other,'" which is "a consequence of the fact that '[t]he majority-rule concept is today unquestionably at the center of our federal labor policy.'" *Children's Hosp. & Research Ctr. of Oakland, Inc. v. NLRB*, 793 F.3d 56, 57 (D.C. Cir. 2015) (emphasis added) (alteration in original) (quoting *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 684 (1944); *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967)).

Local 669 repeatedly notes that the term "shall" in Section 9(a) is mandatory. *See, e.g.*, Corr. Cross-Mot. at 11; Pls.' Reply at 6-7. To be sure, "[o]rdinarily, legislation using 'shall' indicates a mandatory duty." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016). But this argument overlooks the key questions: a mandatory duty on whose part, to do what? By its terms, Section 9(a) merely states that a representative enjoying majority support "shall be" the exclusive bargaining representative of those employees. 29 U.S.C. § 159(a). Ultimately, the gravamen of Local 669's allegations is that the Board misapplied Section 9(a) to the facts of this case. Corr. Cross Mot. at 6-9. But that is insufficient to create jurisdiction in this Court under the *Leedom* exception.

Local 669 also claims that the Board violated Section 9(a) by "purporting to carve out the employees of AFP" from the Association's multi-employer unit. Corr. Cross-Mot. at 8. Section 9(a), however, places no requirement on the Board to recognize a particular bargaining unit. In fact, the next subsection of the NLRA, Section 9(b), specifically provides that "[t]he Board shall

decide in each case . . . [which] unit [is] appropriate for the purposes of collective bargaining . . . ." 29 U.S.C. § 159(b). And "[i]t is well-established that 'the Board need only select *an* appropriate unit, not *the most* appropriate unit.'" *Rhino Nw., LLC v. NLRB*, 867 F.3d 95, 99 (D.C. Cir. 2017) (quoting *Dodge of Naperville, Inc. v. NLRB*, 796 F.3d 31, 38 (D.C. Cir. 2015)). Thus, the NLRA does not, as Local 669 claims, require the Board to conduct elections only at the level of the Association's multi-employer unit.

Tellingly, Local 669 concedes that it has not located a single case where a court has found subject matter jurisdiction under *Leedom* on the theory that the Board allegedly violated Section 9(a) of the NLRA. Pl.'s Reply at 7 n.4. Instead, it cites two cases where courts have exercised *Leedom* jurisdiction where the Board allegedly violated Section 9(c). Corr. Cross-Mot. at 6 (citing *Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch*, 322 F.2d 993, 996 (D.C. Cir. 1963); *Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, No. 2758-67, 1968 U.S. Dist. LEXIS 8513 (D.D.C. Jan. 17, 1968)).[1] Unlike Section 9(a), however, Section 9(c) *does* contain "clear and mandatory" language requiring the Board to take certain actions. *See* 29 U.S.C. § 159(c)(1) ("If *the Board* finds upon the record of such hearing that such a question of representation exists, it *shall* direct an election by secret ballot and *shall* certify the results thereof." (emphases added)). Thus, it is hardly surprising that a court could find *Leedom* jurisdiction related to a purported violation of Section 9(c), given this language. But no such language exists in Section 9(a). As such, Local 669's argument that "the result should be the same" under *Leedom* for both Section 9(a) and Section 9(c) claims is unpersuasive. *See* Corr. Cross-Mot at 6.

---

[1] Local 669 claims that these cases involved the Board's alleged violation of a duty under Section 9(b) of the NLRA, Corr. Cross-Mot at 6, but that is incorrect. *Miami Newspaper*, 322 F.2d at 997 (Section 9(c)(1)); *Elec. Workers*, 1968 U.S. Dist. LEXIS 8513, at *6 (same).

11

Local 669 also argues that the Board violated the terms of its 1954 order certifying Local 669 as the collective bargaining representative of employees whose employers are members of the Association. *See, e.g.*, Corr. Cross-Mot. at 4,. But even assuming the Board did violate the terms of its 1954 order (which the Court highly doubts for reasons discussed below), that, standing alone, cannot serve as a basis for *Leedom* jurisdiction. In order to establish *Leedom* jurisdiction to challenge a certification, Local 669 must allege that the Board acted "in excess of its delegated powers and contrary to a specific prohibition in the [NLRA]." *Leedom*, 358 U.S. at 188. Asserting that the Board was not faithful to its prior certification does not suggest anything of the sort.

For similar reasons, Local 669 also cannot allege a violation of the Board's "contract bar" rule to establish *Leedom* jurisdiction because it "appears nowhere in statute." *Hill*, 309 F. Supp. 2d at 68; *cf. United Food & Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278-79 (D.C. Cir. 1982) (rejecting *Leedom* jurisdiction because the Board's *Excelsior* requirement—which was allegedly violated—"does not specifically appear in the [NLRA]"). That is, the Board's alleged failure to comply with its own rules and orders—such as the "contract bar"—is insufficient to establish *Leedom* jurisdiction.

In sum, Local 669 has failed to identify a "specific prohibition" in the NLRA that is "clear and mandatory" which the Board violated, *Nat'l Air Traffic Controllers*, 437 F.3d at 1263, that could form the basis of *Leedom* jurisdiction.[2] As such, "[i]t is correct procedure . . . for the court simply to hold that the statutory mandate is not unequivocal and compelling; *any colorable*

---

[2] In light of this conclusion, the Court need not address the parties' dispute over whether Local 669 has a "meaningful and adequate means of vindicating its statutory rights," *MCorp.*, 502 U.S. at 43, by picketing in violation of Section 8(b)(7)(B) of the NLRA, *see* Def.'s MTD at 21-24; Corr. Cross-Mot. at 11.

*support for the Board's ruling should be treated as a jurisdictional defect dictating dismissal."* *Hartz*, 727 F.2d at 1313 (quoting R. Gorman, *Basic Text on Labor Law* 64-65 (1976)); *see id.* at 1314 ("We fully endorse this prescription as an accurate statement of the law."). "Colorable support," of course, is an extremely low bar. Thus, "an error of fact or law is insufficient" to establish *Leedom* jurisdiction. *Physicians Nat'l*, 642 F.2d at 496; *see also Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988) ("Garden-variety errors of law or fact are not enough."). "For [*Leedom*] jurisdiction to exist, the Board must have stepped so plainly beyond the bounds of the [NLRA], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court . . . ." *Local 130, Int'l Union of Elec., Radio & Mach. Workers v. McCulloch*, 345 F.2d 90, 95 (D.C. Cir. 1965).

Here, to the extent that the above precedent suggests that even after concluding that there is no claim that the Board violated an "unequivocal and compelling" statutory mandate, the Court should also evaluate whether there is "any colorable support" for the Board's action, it is clear that such supports exists.

The Board affirmed the Decision on two major issues. First, the Board agreed that the relationship between AFP and Local 669 was governed by Section 8(f), not Section 9(a). More than "colorable support" exists for this conclusion. "[A] construction-industry contract will be *presumed* to be governed by section 8(f) unless the employer and union clearly intended to create a section 9(a) agreement." *Colo. Fire Sprinkler*, 891 F.3d at 1038 (quoting *Nova Plumbing*, 330 F.3d at 537). "A Section 8(f) relationship can convert into a Section 9(a) relationship only if the union 'either petition[s] for a representation election or demand[s] recognition from the employer by providing proof of majority support.'" *Id.* at 1035 (alterations in original) (quoting *M & M Backhoe Serv., Inc. v. NLRB*, 469 F.3d 1047, 1050 (D.C. Cir. 2006)). "[T]o rebut the

*support for the Board's ruling should be treated as a jurisdictional defect dictating dismissal."* *Hartz*, 727 F.2d at 1313 (quoting R. Gorman, *Basic Text on Labor Law* 64-65 (1976)); *see id.* at 1314 ("We fully endorse this prescription as an accurate statement of the law."). "Colorable support," of course, is an extremely low bar. Thus, "an error of fact or law is insufficient" to establish *Leedom* jurisdiction. *Physicians Nat'l*, 642 F.2d at 496; *see also Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988) ("Garden-variety errors of law or fact are not enough."). "For [*Leedom*] jurisdiction to exist, the Board must have stepped so plainly beyond the bounds of the [NLRA], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court . . . ." *Local 130, Int'l Union of Elec., Radio & Mach. Workers v. McCulloch*, 345 F.2d 90, 95 (D.C. Cir. 1965).

Here, to the extent that the above precedent suggests that even after concluding that there is no claim that the Board violated an "unequivocal and compelling" statutory mandate, the Court should also evaluate whether there is "any colorable support" for the Board's action, it is clear that such supports exists.

The Board affirmed the Decision on two major issues. First, the Board agreed that the relationship between AFP and Local 669 was governed by Section 8(f), not Section 9(a). More than "colorable support" exists for this conclusion. "[A] construction-industry contract will be *presumed* to be governed by section 8(f) unless the employer and union clearly intended to create a section 9(a) agreement." *Colo. Fire Sprinkler*, 891 F.3d at 1038 (quoting *Nova Plumbing*, 330 F.3d at 537). "A Section 8(f) relationship can convert into a Section 9(a) relationship only if the union 'either petition[s] for a representation election or demand[s] recognition from the employer by providing proof of majority support.'" *Id.* at 1035 (alterations in original) (quoting *M & M Backhoe Serv., Inc. v. NLRB*, 469 F.3d 1047, 1050 (D.C. Cir. 2006)). "[T]o rebut the

*support for the Board's ruling should be treated as a jurisdictional defect dictating dismissal."* *Hartz*, 727 F.2d at 1313 (quoting R. Gorman, *Basic Text on Labor Law* 64-65 (1976)); *see id.* at 1314 ("We fully endorse this prescription as an accurate statement of the law."). "Colorable support," of course, is an extremely low bar. Thus, "an error of fact or law is insufficient" to establish *Leedom* jurisdiction. *Physicians Nat'l*, 642 F.2d at 496; *see also Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988) ("Garden-variety errors of law or fact are not enough."). "For [*Leedom*] jurisdiction to exist, the Board must have stepped so plainly beyond the bounds of the [NLRA], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court . . . ." *Local 130, Int'l Union of Elec., Radio & Mach. Workers v. McCulloch*, 345 F.2d 90, 95 (D.C. Cir. 1965).

Here, to the extent that the above precedent suggests that even after concluding that there is no claim that the Board violated an "unequivocal and compelling" statutory mandate, the Court should also evaluate whether there is "any colorable support" for the Board's action, it is clear that such supports exists.

The Board affirmed the Decision on two major issues. First, the Board agreed that the relationship between AFP and Local 669 was governed by Section 8(f), not Section 9(a). More than "colorable support" exists for this conclusion. "[A] construction-industry contract will be *presumed* to be governed by section 8(f) unless the employer and union clearly intended to create a section 9(a) agreement." *Colo. Fire Sprinkler*, 891 F.3d at 1038 (quoting *Nova Plumbing*, 330 F.3d at 537). "A Section 8(f) relationship can convert into a Section 9(a) relationship only if the union 'either petition[s] for a representation election or demand[s] recognition from the employer by providing proof of majority support.'" *Id.* at 1035 (alterations in original) (quoting *M & M Backhoe Serv., Inc. v. NLRB*, 469 F.3d 1047, 1050 (D.C. Cir. 2006)). "[T]o rebut the

presumption of Section 8(f) status, actual evidence that a majority of employees have thrown their support to the union must exist and, in Board proceedings, that evidence must be reflected in the administrative record." *Id.* at 1040.

The Board agreed with the Regional Director that the language in the 2005 Acknowledgment, the 2010 Assent, and the 2011 Settlement was insufficient to rebut the presumption of Section 8(f) status. The 2005 Acknowledgment, for instance, states that a "clear majority" of AFP sprinkler fitter employees are "represented by [Local 669]." Decision at 5; Def.'s MTD at 6. But "there is a significant difference between a contractual statement that the union '*represents*' a majority of union employees—which would be accurate under either an 8(f) or a 9(a) agreement—and a statement to the effect that, for example, the union '*has the support*' . . . of a majority to represent them." *Rd. Sprinkler Fitters Local Union No. 669, U.A. v. NLRB*, 637 F. App'x 611, 612 (D.C. Cir. 2016) (per curiam) (emphases added) (quoting *Staunton Fuel*, 335 N.L.R.B. at 720). Notably, the Circuit recently affirmed two Board decisions that concluded that language similar to the 2005 Acknowledgment was insufficient to establish a Section 9(a) relationship. *See id.*; *Rd. Sprinkler Fitters Local Union No. 669, U.A. v. NLRB*, 637 F. App'x 613, 614 (D.C. Cir. 2016) (per curiam); *see also Colo. Fire Sprinkler*, 891 F.3d at 1036, 1040 (holding that contract language providing that "the Union has offered to provide the Employer with confirmation of its support by a majority of such employees" was insufficient to establish a Section 9(a) relationship because "[t]he record is bereft of evidence either confirming or controverting majority support"). As reflected by these authorities, there is clearly "colorable support" for the Board's conclusion that the relationship between Local 669 and AFP's sprinkler fitters was governed by Section 8(f), not Section 9(a), because the documents governing the

14

relationship between the parties did not demonstrate "evidence of majority support."[3] *Rd. Sprinkler Fitters*, 637 F. App'x at 614.

Second, after determining that Local 669 and AFP's sprinkler fitters formed a Section 8(f) relationship, the Board also concluded that the Regional Director "correctly rejected [Local 669's] arguments regarding the multiemployer unit and contract bar in directing an election in the single-employer unit." Order at 1 n.1 (citing *John Deklewa & Sons, Inc.*, 282 N.L.R.B. 1375, 1385 (1987), *enforced sub nom. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770 (3d Cir. 1988)). Again, there is much more than "colorable support" to back this conclusion. Under Board precedent, "if a labor organization desires to achieve status as a 9(a) representative of employees of employers in a construction industry multiemployer association . . . it must have the manifest support of a majority of the employees of *any individual employer* whose employees it seeks to merge into the unit under a 9(a) agreement." *Comtel*, 305 N.L.R.B. at 291 (emphasis added); *see also John Deklewa*, 282

---

[3] Local 669 cites decisions from the Board and outside this Circuit where Local 669's recognition agreements were deemed to create a Section 9(a) relationship. Pl.'s Reply at 4 n.2. But the question here is whether the Board had "colorable support" for its determination in this case, which it clearly did. The Order relied on *Staunton Fuel*, 335 N.L.R.B. 717, a seminal Board decision for determining whether a Section 8(f) or Section 9(a) relationship exists, to conclude that AFP and Local 669 had a Section 8(f) relationship. Order at 1 n.1. Moreover, the Board also based its decision on *G & L Associated, Inc.*, 358 N.L.R.B. 1722 (2012), in which both the Board and the Circuit, *Rd. Sprinkler Fitters*, 637 F. App'x 611 (enforcing *G & L Associated*), held that language materially identical to the 2005 Acknowledgment did not create a Section 9(a) relationship. And while Local 669 previously cited the Board's decision in *Colorado Fire Sprinkler* to support its position, Pl.'s Reply at 4 n.2, it has since changed its tune in light of the Circuit's determination that the agreements in that case also failed to create a Section 9(a) relationship, *see* ECF No. 28 at 1-2; *Colo. Fire Sprinkler*, 891 F.3d at 1040. Local 669 now tries to argue that *Colorado Fire Sprinkler* is distinguishable because it involves a single-employer bargaining relationship. *See* ECF No. 28 at 1-2. But the holding in that case did not turn on whether the bargaining relationship at issue was single- or multi-employer. *See* 891 F.3d at 1038-41.

N.L.R.B. at 1385 n.42 ("[T]he employees of a single employer cannot be precluded from expressing their representational desires simply because their employer has joined a multiemployer association."). Thus, there is "colorable support" for the Board's conclusion that the Regional Director was correct that AFP's decision to join the Association's multi-employer bargaining unit did not create a Section 9(a) relationship protected by the "contract bar" rule.[4] And the NLRA and *Rhino Northwest, LLC v. NLRB*, 867 F.3d 95 (D.C. Cir. 2017), provide more than "colorable support" for the Board's affirmance of the Regional Director's decision to order an election in a single-employer unit under these circumstances. *See* 29 U.S.C. § 159(b); 867 F.3d at 99.

## IV. Conclusion

For all of the above reasons, the Court will, in a separate Order, grant the Board's Motion to Dismiss, ECF No. 11, and deny as moot Local 669's Cross-Motion for Summary Judgment and Corrected Cross-Motion for Summary Judgment, ECF Nos. 13 and 17.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 24, 2018

---

[4] Local 669 argues that the Board's reliance on *Comtel* is "misplaced" because AFP was required to bring any challenge to Local 669's majority status within six months, which it did not do. Pl.'s Reply at 4 n.3 (citing *Casale Indus., Inc.*, 311 N.L.R.B. 951, 952-53 (1993)). But the Board concluded that Local 669 forfeited this argument, Order at 1 n.1, so the Board still had "colorable support" for its conclusion.